CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JAMES S. THREATT (Bar No. 325317)
(E-Mail: jimmy_threatt@fd.org)
HANNAH A. BOGEN (Bar No. 324294)
(E-Mail: Hannah_Bogen@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
RUSSELL GOMEZ DZUL

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>RUSSELL GOMEZ DZUL,<br><br>  Defendant. | Case No. 2:25-CR-00503-MAA<br><br>**NOTICE OF MOTION AND MOTION TO SUPPRESS POST-ARREST EVIDENCE; DECLARATION OF HANNAH A. BOGEN; DECLARATION OF RUSSELL GOMEZ DZUL; DECLARATION OF CARINA ARRIOLA**<br><br>**Hearing Date:** November 5, 2025<br>**Hearing Time:** 10:00 AM |

TO PLAINTIFF UNITED STATES OF AMERICA AND ITS COUNSEL OF RECORD:

Please take notice that on November 5, 2025, or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Maria A. Audero, United States Magistrate Judge, Russell Gomez Dzul, by and through his attorneys of record, Deputy Federal Public Defenders James S. Threatt and Hannah A. Bogen, will hereby move the Court for the following:

## **MOTION**

Russell Gomez Dzul moves this Honorable Court for an order suppressing all evidence collected after his unconstitutional arrest on June 7, 2025 ("Motion"). This Motion is made pursuant to the Fourth and Fifth Amendments to the United States Constitution and is based upon the attached Memorandum of Points and Authorities, the declarations of Hannah A. Bogen, Carina Arriola, and Russell Gomez Dzul, all files and records in this case, and such evidence and argument as may be presented at a hearing on this motion.

Counsel met and conferred in good faith on the instant Motion and could not agree to the relief sought.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 2, 2025          By  */s/ Hannah A. Bogen*
                                 HANNAH A. BOGEN
                                 JAMES S. THREATT
                                 Deputy Federal Public Defenders
                                 Attorneys for RUSSELL GOMEZ DZUL

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................1

II. FACTUAL BACKGROUND .................................................................................1

    A.    The Allegations. ...........................................................................................1

    B.    The Border Patrol Agents Profiled Mr. Gomez Dzul and Arrested Him Without Justification. ..................................................................................2

    C.    The Border Agents Immediately Questioned Mr. Gomez Dzul Without Providing Any *Miranda* Warnings. ............................................................2

    D.    The Border Agents Continued to Violate Mr. Gomez Dzul's Fifth Amendment Rights. ....................................................................................3

    E.    Mr. Gomez Dzul Invoked His Right to Counsel As Soon As He Read and Understood His *Miranda* Rights. ........................................................4

III. ARGUMENT ..........................................................................................................4

    A.    The Government Bears the Burden at Every Single Step With Respect to the Warrantless Arrest of Mr. Gomez Dzul. .............................................4

    B.    The Border Agents Immediately Arrested Mr. Gomez Dzul Without Probable Cause. ...........................................................................................6

        1.    Mr. Gomez Dzul Was Arrested. .......................................................6

        2.    The Border Agents Lacked Probable Cause. ...................................7

    C.    Suppression of All Post-Arrest Evidence is the Remedy Required by the Fourth Amendment. ..............................................................................9

    D.    The Government Bears the Burden of Demonstrating that the Post-Arrest Evidence Should Not Be Suppressed. ..............................................9

    E.    The Border Agents Violated the Fifth Amendment Immediately On the Heels of their Unconstitutional Arrest. ..................................................10

        1.    Mr. Gomez Dzul was in Custody from the Beginning. ..................10

        2.    Mr. Gomez Dzul Was Interrogated. ...............................................11

    F.    During the First Formal Interrogation, Mr. Gomez Dzul Did Not, and Could Not, Voluntarily and Intelligently Waive his *Miranda* Rights. .......11

IV. CONCLUSION .....................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Barlow v. Ground*,
    943 F.2d 1132 (9th Cir. 1991) ........................................................................... 7

*California v. Beheler*,
    463 U.S. 1121 (1983) ....................................................................................... 10

*Davis v. United States*,
    131 S. Ct. 2419 (2011) ....................................................................................... 9

*Harper v. City of Los Angeles*,
    533 F.3d 1010 (9th Cir. 2008) ........................................................................... 6

*Illinois v. Wardlow*,
    528 U.S. 119 (2000) ........................................................................................... 8

*Jones v. United States*,
    357 U.S. 493 (1958) ........................................................................................... 4

*Katz v. United States*,
    389 U.S. 347 (1967) ........................................................................................... 4

*Liberal v. Estrada*,
    632 F.3d 1064 (9th Cir. 2011) ........................................................................... 8

*Miranda v. Arizona*,
    384 U.S. 436 (1966) .............................................................................. 9, 10, 11

*Moran v. Burbine*,
    475 U.S. 412 (1986) .................................................................................. 12, 13

*Rhode Island v. Innis*,
    446 U.S. 291 (1980) ......................................................................................... 11

*Stanley v. Schriro*,
    598 F.3d 612 (9th Cir. 2010) ........................................................................... 10

*Tejeda–Mata v. I.N.S.*,
    626 F.2d 721 (9th Cir.1980) .............................................................................. 6

*United States v. Arzate–Nunez*,
    18 F.3d 730 (9th Cir. 1994) ............................................................................... 6

## TABLE OF AUTHORITIES

Page(s)

*United States v. Brignoni-Ponce*,
 422 U.S. 873 (1975) ...................................................................................... 7

*United States v. Brown*,
 925 F.3d 1150 (9th Cir. 2019) ...................................................................... 8

*United States v. Carbajal*,
 956 F.2d 924 (9th Cir. 1992) ........................................................................ 4

*United States v. Cerna*,
 No. CR 08-0730-WHA, 2010 WL 5387694 (N.D. Cal. Dec. 22, 2010) ..... 5

*United States v. Crews*,
 502 F.3d 1130 (9th Cir. 2007) .............................................................. 12, 13

*United States v. Delgadillo–Velasquez*,
 856 F.2d 1292 (9th Cir.1988) ....................................................................... 6

*United States v. Emens*,
 649 F.2d 653 (9th Cir. 1980) ........................................................................ 5

*United States v. Harrison*,
 34 F.3d 886 (9th Cir. 1994) .......................................................................... 9

*United States v. Huguez-Ibarra*,
 954 F.2d 546 (9th Cir. 1992) ........................................................................ 5

*United States v. Mendenhall*,
 446 U.S. 544 (1980) .................................................................................... 10

*United States v. Mendoza*,
 530 U.S. 428 (2000) ...................................................................................... 9

*United States v. Montero-Camargo*,
 208 F.3d 1122 (9th Cir. 2000) ...................................................................... 7

*United States v. Montes*,
 103 F.3d 142 (9th Cir. 1996) ........................................................................ 6

*United States v. Patterson*,
 648 F.2d 625 (9th Cir. 1981) ........................................................................ 6

*United States v. Rodriguez*,
 976 F.2d 592 (9th Cir.1992) ......................................................................... 7

## **TABLE OF AUTHORITIES**

Page(s)

*United States v. Ventresca*,
   380 U.S. 102 (1965)..................................................................................................4

*United States v. Washington*,
   462 F.3d 1124 (9th Cir. 2006) .................................................................................11

*Vargas Ramirez v. United States*,
   93 F. Supp. 3d 1207 (W.D. Wash. 2015) ..................................................................6

*Withrow v. Williams*,
   507 U.S. 680 (1993)................................................................................................11

*Wong Sun v. United States*,
   371 U.S. 471 (1963)..................................................................................................5

*Wong Sun v. United States*,
   371 U.S. 471,484 (1963) ..........................................................................................9

**Federal Statutes**

18 U.S.C. § 111(a)(1).....................................................................................................1

18 U.S.C. § 3501............................................................................................................9

18 U.S.C. § 3501(a) .......................................................................................................9

**Federal Constitution**

Fifth Amendment ...............................................................................................*passim*

Fourth Amendment ..........................................................................................4, 5, 8, 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On June 7, 2025, numerous Border Patrol Agents terrorized Los Angeles, conducting roving patrols, chasing and detaining people they "suspected" of illegal immigration.

When chasing one such suspect, three of the agents ran into Mr. Gomez Dzul, a bystander riding his bike in the area.

The agents immediately assumed Mr. Gomez Dzul was undocumented because of his skin color. They chased him down the street in a car and on foot. Then, they cornered him in a driveway where he stood visibly terrified and confused, hiding behind a Jeep SUV.

Without any explanation, two of the agents cuffed Mr. Gomez Dzul, placed him in their car with a third agent, and started driving. The agents questioned him in the car and at two more locations. They never provided Mr. Gomez Dzul with a neutral Spanish interpreter. Instead, the agents rushed him to waive his *Miranda* rights without confirming he understood them, which he did not. The agents asked Mr. Gomez Dzul questions they knew would elicit incriminating responses.

Mr. Gomez Dzul suffered Fourth and Fifth Amendment violations. The agents did not have probable cause to arrest him, but they did anyway. They did not ensure that Mr. Gomez Dzul understood and knowingly, intelligently, and voluntarily waived his *Miranda* rights, but they questioned him anyway. As a remedy for all violations here, the Court should suppress all evidence collected after Mr. Gomez Dzul's June 7, 2025 arrest.

## II. FACTUAL BACKGROUND

**A.   The Allegations.**

Mr. Gomez Dzul is charged with assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1). (ECF 12.) The government alleges that during a stop while he was being transported for questioning, Mr. Gomez Dzul somehow assaulted a border patrol

1

agent. (*Id.*) In truth, at the time of the alleged assault, he was fighting for his life - handcuffed, laying down, and gasping for air as agents choked him in the back of a patrol vehicle.[1]

**B.  The Border Patrol Agents Profiled Mr. Gomez Dzul and Arrested Him Without Justification.**

On June 7, 2025, numerous Border Patrol Agents (the "Border Agents") conducted investigations and raids throughout Los Angeles, California. (*See* Declaration of Hannah A. Bogen ("Bogen Decl.") Ex. A.) While chasing after, and losing, a different person, three Border Agents ran into Mr. Gomez Dzul, a bystander, riding his bicycle. (*Id.* at 0:50-1:52.) Having lost sight of the individual they were originally chasing, the Border Agents focused their attention on Mr. Gomez Dzul, the closest brown-skinned man in the area. (*Id.*)

Petrified because he was being chased for no reason, Mr. Gomez Dzul pulled off of his bike and hid behind a parked car. (*Id.* at 1:52-2:23.) The Border Agents immediately pushed him to the ground, cuffed him, placed him in the vehicle, and drove off, without telling Mr. Gomez Dzul he was under arrest, or where they were going. (*Id.* at 2:23-4:40.)

**C.  The Border Agents Immediately Questioned Mr. Gomez Dzul Without Providing Any *Miranda* Warnings.**

One of the Border Agents sat next to Mr. Gomez Dzul in the back seat, and two more were in the front. (*Id.*) While in the vehicle, the Border Agents commented on those they are trying to apprehend, likely referring to people they suspected to be undocumented, saying "good job bro…they are all running that way…we got a bunch of em'…don't let them do that shit to you." (*Id.* at 4:40-5:26.) Less than a minute after placing Mr. Gomez Dzul in the vehicle, without providing any *Miranda* warnings, the

---

[1] For efficiency and clarity, the facts in this Motion focus primarily on Mr. Gomez Dzul's arrest and all statements he made. The allegations in this case refer to the time period before Mr. Gomez Dzul sat for any formally recorded video or audio interview, and are irrelevant to the Motion. (ECF 12.)

2

1  Border Agent in the back seat next to him asked if he was in the United States legally.
2  (*Id.* at 5:26-6:15; *See* Bogen Decl. Ex. D.) Moments later, the Border Agents exited the
3  car to continue searching for the individual they lost. (*Id.* at 6:15-8:00.) One Border
4  Agent mentioned he did not want to jump a residential gate because of the "cameras."
5  (*Id.* at 7:50-52.)

### D. The Border Agents Continued to Violate Mr. Gomez Dzul's Fifth Amendment Rights.

That afternoon, Border Agents Mendoza and Gonzalez placed Mr. Gomez Dzul in a room. (*See* Bogen Decl. Ex. B.) Mr. Gomez Dzul's best language is Spanish, and no Spanish interpreter was present. (*Id.*) Instead, Border Agent Gonzalez, an interested and biased party, spoke to Mr. Gomez Dzul in Spanish. He read him his *Miranda* rights quickly as follows:

- Border Agent Gonzalez: Do you understand your rights?
- Mr. Gomez Dzul: No.
- Border Agent Gonzalez: You don't understand your rights?
- Mr. Gomez Dzul: Oh the ones you mentioned? Yes.
- Border Agent Gonzalez: The ones I just read to you. Mhm.
- Mr. Gomez Dzul: Yes.
- Border Agent Gonzalez: OK. Are you willing waiving your rights to talk to me?
- Mr. Gomez Dzul: (Nods no) I don't understand.
- Border Agent Gonzalez: Do you want to talk to me right now or not?
- Mr. Gomez Dzul: Yes.

(Bogen Decl. Ex. B at 0:00-1:30; *Id.* Ex. C at pp. 2-3.)

Mr. Gomez Dzul then proceeded to speak to the Border Agents, who questioned him about what happened that day. (*Id.*) The questions they asked were designed to elicit incriminating statements. (*Id.*) Among other questions, Mr. Gomez Dzul was asked the following:

3

- If he was in the United States legally;
- Why he "ran off";
- If he had immigration documents;
- Which country he was from;
- If he was in the United States illegally;
- Why he was in custody;
- What happened "with the guy who chased after [him]"; and
- If he tried to get out of the patrol car.

(*See* Bogen Decl. Exs. A-D.)

### E. Mr. Gomez Dzul Invoked His Right to Counsel As Soon As He Read and Understood His *Miranda* Rights.

Approximately three hours later, Mr. Gomez Dzul met with Special Agents Steve Yoon, Corbin Phipps, and Jonathan Rodriguez for a second interview. (*See* Bogen Decl. Ex. E.) After receiving his *Miranda* warnings in writing, in Spanish, which were also read to him in Spanish by Special Agent Rodriguez, he immediately declined to speak with the agents and invoked his right to an attorney. (*Id.*)

### III. ARGUMENT

### A. The Government Bears the Burden at Every Single Step With Respect to the Warrantless Arrest of Mr. Gomez Dzul.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Constitution Amendment IV. The Fourth Amendment incorporates a strong preference for search warrants. *See United States v. Ventresca*, 380 U.S. 102, 106 (1965). Warrantless searches are *per se* unreasonable. *Katz v. United States*, 389 U.S. 347, 357 (1967). While warrantless searches are not absolutely proscribed, the exceptions to the warrant requirement are "jealously and carefully drawn." *Jones v. United States*, 357 U.S. 493, 499 (1958). The burden is on the government to show the reasonableness of a warrantless arrest. *See, e.g., United States*

*v. Carbajal*, 956 F.2d 924, 930 (9th Cir. 1992). If the government cannot satisfy its burden of proving that the warrantless arrest was constitutional, all evidence recovered as a result of the arrest must be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 485–86 (1963).

  Here, the Border Agents did not have a warrant. The law is clear that it is the government's burden to justify the warrantless arrest in this case. *See, e.g., United States v. Huguez-Ibarra*, 954 F.2d 546, 551 (9th Cir. 1992). The defense is not required to present any arguments in anticipation of the government's potential justifications for a warrantless search and seizure in its initial moving papers. The Ninth Circuit has rejected such reasoning: "[T]he Government appears to be arguing that the defendants must anticipate and rebut any conceivable theory that might have justified the searches [or arrest]. This is not the law. The Government bears the burden in cases of warrantless searches [and arrests], and at no time does it shift to the defendant." *United States v. Emens*, 649 F.2d 653, 657 n.6 (9th Cir. 1980). Judge Alsup in the Northern District of California summarized the procedure for challenging warrantless searches and seizures as follows:

> Where the motion challenges a warrantless search or seizure, the burden is on the government to justify the search or to show an exception. That is, once the movant demonstrates that a warrantless search or seizure occurred, the burden shifts to the government to demonstrate a justification or exception, usually via officer declarations.

*United States v. Cerna*, No. CR 08-0730-WHA, 2010 WL 5387694, at *1 (N.D. Cal. Dec. 22, 2010).

  The above applies with equal force to federal immigration officers. "The authority of federal immigration officers to detain and arrest suspected aliens is limited by the strictures of the Fourth Amendment. Specifically, an immigration officer is authorized to 'briefly detain a person for questioning' if the officer 'has a reasonable

5

suspicion, based on specific, articulable facts, that the person ... is an alien illegally in the United States.' Similarly, an immigration officer is also authorized to arrest a person if the 'officer has reason to believe that the person to be arrested ... is an alien illegally in the United States,' a requirement which courts have equated with the constitutional 'probable cause' requirement. As such, the lawfulness of a Border Patrol agent's seizure turns on the familiar principles of reasonable suspicion and probable cause: if an agent detains a person for a brief, investigatory stop, the stop must be supported by reasonable suspicion that the person is unlawfully present in the United States, and if an agent arrests a person, the arrest must be supported by probable cause that the person is unlawfully present in the United States." *Vargas Ramirez v. United States*, 93 F. Supp. 3d 1207, 1218–19 (W.D. Wash. 2015) (citing *Zepeda v. U.S. I.N.S.,* 753 F.2d 719, 725 (9th Cir.1983); *Tejeda–Mata v. I.N.S.,* 626 F.2d 721, 725 (9th Cir.1980) (citations omitted).

**B.  The Border Agents Immediately Arrested Mr. Gomez Dzul Without Probable Cause.**

    **1.  Mr. Gomez Dzul Was Arrested.**

The Ninth Circuit has made clear that where force is used such that the innocent person could reasonably have believed he was not free to go and that he was being taken into custody indefinitely, an arrest has occurred. *See, e.g., United States v. Patterson*, 648 F.2d 625, 632–34 (9th Cir. 1981). "When the government makes an arrest without a warrant, as it did in this case, it must demonstrate that it had probable cause for the arrest. An arresting officer…has probable cause to make an arrest when, under the totality of the circumstances known to the arresting officer [ ], a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *United States v. Montes*, 103 F.3d 142 (9th Cir. 1996) (*citing United States v. Garza,* 980 F.2d 546, 549 (9th Cir.1992); *United States v. Delgadillo–Velasquez,* 856 F.2d 1292, 1295–98 (9th Cir.1988); *also United States v. Arzate–Nunez,* 18 F.3d 730, 735 (9th Cir. 1994). "[M]ere suspicion, common rumor, or even strong

6

reason to suspect are not enough." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008) (quoting *United States v. Lopez,* 482 F.3d 1067, 1072 (9th Cir.2007)) (internal quotations omitted).

Here, multiple Border Agents cornered Mr. Gomez Dzul, immediately threw him to the ground, handcuffed him, and placed him in their car, alone, with three armed Border Agents. (*See* Bogen Decl. Ex. A.). Under the totality of circumstances, a reasonable person would obviously know that they were not free to leave, especially when handcuffed and being transported to an unknown location. When the officers drove off with Mr. Gomez Dzul, he was under arrest, and they needed probable cause to have him in custody.

## 2. The Border Agents Lacked Probable Cause.

Mr. Gomez Dzul, a Latino man, was lawfully riding his bicycle, then continued to ride past the Border Agents. When they started chasing him for no reason, he hid behind a parked car because he was petrified. Neither of these factors (skin color or alleged flight) are enough to create reasonable suspicion to stop Mr. Gomez Dzul - let alone probable cause to arrest him. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991) ("To arrest an individual, police need **more than a reasonable suspicion**; they must have probable cause.").

First, Mr. Gomez Dzul's skin color or suspected ancestry is not enough to create reasonable suspicion. *United States v. Brignoni-Ponce*, 422 U.S. 873 (1975) (holding that there was no reasonable suspicion sufficient to permit a roving patrol to stop a vehicle near the Mexican border and question its occupants regarding their status if based only on Mexican ancestry); *United States v. Montero-Camargo*, 208 F.3d 1122, 1129–32 (9th Cir. 2000) ("Hispanic appearance is not, in general, an appropriate [reasonable suspicion] factor…"); *United States v. Rodriguez,* 976 F.2d 592, 595–96 (9th Cir.1992) (concluding that a Hispanic man carefully driving an old Ford with a worn suspension who looked in his rear view mirror and swerved slightly while being followed by agents in a marked car-described "too many individuals to create a

7

|    |    |
|---|---|
| 1  | reasonable suspicion that this particular defendant was engaged in criminal activity") |
| 2  | (citations and quotation marks omitted); *United States v. Brown,* 925 F.3d 1150 (9th |
| 3  | Cir. 2019) ("the burden of aggressive and intrusive police action [that] falls |
| 4  | disproportionately on African-American, and sometimes Latino, males and observed |
| 5  | that 'as a practical matter neither society nor our enforcement of the laws is yet color- |
| 6  | blind…[t]here is little doubt that uneven policing may reasonably affect the reaction of |
| 7  | certain individuals- including those who are innocent- to law enforcement.") (citation |
| 8  | omitted). |
| 9  |         Second, avoidance of the police, and even flight, standing alone, are not enough |
| 10 | to create reasonable suspicion.  *Liberal v. Estrada*, 632 F.3d 1064, 1078 (9th Cir. 2011) |
| 11 | ("[A]voidance of the police, standing alone, does not give rise to a particularized, |
| 12 | reasonable suspicion that a person is committing a crime…when an officer, without |
| 13 | reasonable suspicion or probable cause, approaches an individual, the individual has a |
| 14 | right to ignore the police and go about his business…"), abrogated on other grounds by |
| 15 | *Hampton v. California*, 83 F.4th 754 (9th Cir. 2023); *Illinois v. Wardlow*, 528 U.S. 119, |
| 16 | 131–33 (2000) ("[I]t is a matter of common knowledge that men who are entirely |
| 17 | innocent do sometimes fly from the scene of a crime through fear of being apprehended |
| 18 | as the guilty parties, or from an unwillingness to appear as witnesses. Nor is it true as |
| 19 | an accepted axiom of criminal law that 'the wicked flee when no man pursueth, but the |
| 20 | righteous are as bold as a lion...[a]mong some citizens, particularly minorities…there is |
| 21 | also the possibility that the fleeing person is entirely innocent, but, with or without |
| 22 | justification, believes that contact with the police can itself be dangerous, apart from |
| 23 | any criminal activity associated with the officer's sudden presence. For such a person, |
| 24 | unprovoked flight is neither 'aberrant' nor 'abnormal.'") |
| 25 |         The only "bases" the Border Agents had to arrest Mr. Gomez Dzul do not |
| 26 | amount to probable cause, and the government cannot show otherwise. |
| 27 |    |
| 28 |    |

8

**C.  Suppression of All Post-Arrest Evidence is the Remedy Required by the Fourth Amendment.**

The exclusionary rule "bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States,* 131 S. Ct. 2419, 2423 (2011). The "exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search ..." *Id.* Such derivative or indirectly acquired evidence is often referred to as the "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 484 (1963) (internal quotation marks omitted). A reviewing court must consider the extent to which "evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 488 (internal citations omitted).

Exclusion of all evidence is the only remedy that comports with the Constitution. Every single interaction between Mr. Gomez Dzul and the Border Agents is tainted by the initial unconstitutional arrest. Any evidence gathered from that point forward—including, but not limited to any statements by Mr. Gomez Dzul—must be suppressed.

**D.  The Government Bears the Burden of Demonstrating that the Post-Arrest Evidence Should Not Be Suppressed.**

The government bears the burden of demonstrating that valid *Miranda* warnings were given, and that they were waived knowingly, intelligently, and voluntarily, before any custodial interrogation occurred.[2] *United States v. Harrison*, 34 F.3d 886, 890 (9th Cir. 1994); *see also United States v. Mendoza*, 530 U.S. 428, 439-41 (2000) (discussing constitutional underpinnings of *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) and the

---

[2] Mr. Gomez Dzul seeks to exclude all post-arrest evidence, including the statements he made in the Border Agents' vehicle and during his second set of questioning based on the violations of his Fourth Amendment rights. The statements are fruit of the poisonous tree. In this section, he speaks specifically to the suppression of his video-recorded statements, which should also be suppressed due to Fifth Amendment violations.

9

need to safeguard "precious Fifth Amendment rights"); *see also* 18 U.S.C. § 3501. The government also bears the burden of proving that a defendant's statements were uncoerced and voluntary under 18 U.S.C. § 3501(a) and the Due Process Clause.

In *Miranda*, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. The reason for these procedural safeguards is that custodial interrogation generates "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id.* at 467.

### E. The Border Agents Violated the Fifth Amendment Immediately On the Heels of their Unconstitutional Arrest.

#### 1. Mr. Gomez Dzul was in Custody from the Beginning.

Someone is in custody under *Miranda* if a reasonable person would have believed that they were not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 555 (1980); *see also Stanley v. Schriro*, 598 F.3d 612, 628 (9th Cir. 2010). While courts consider the totality of the circumstances in each case to determine whether a person was in custody at the time of the officer's inquiry, "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983).

Here, when Mr. Gomez Dzul spoke to Border Agents while in the border patrol vehicle, which was video-recorded, he was already in custody. (Bogen Decl. Ex. A.) He had been handcuffed when he was forced into their vehicle, and the footage suggests he remained handcuffed during his custodial interview. (*Id.*; *see also* Bogen Decl. Exs. B, C.) His freedom of movement was also restrained once he was in a room alone with multiple federal officers. Under those circumstances, a reasonable person would not believe they were free to leave, and he was not. *Mendenhall*, 446 U.S. at 555.

10

### 2. Mr. Gomez Dzul Was Interrogated.

A person is interrogated by law enforcement if they are subject to express questioning by the police, or to "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980) (footnote omitted). An officer can "interrogate" a suspect for Miranda purposes without uttering a question. *Id.*; *see United States v. Washington*, 462 F.3d 1124, 1132 (9th Cir. 2006) (explaining the "test is an objective one").

Here, from the very moment Mr. Gomez Dzul was taken into custody, he was asked questions intended to elicit incriminating responses, including but not limited to the following:

- If he was in the United States legally;
- Why he "ran off";
- If he had immigration documents;
- Which country he was from;
- If he was in the United States illegally;
- Why he was in custody;
- What happened "with the guy who chased after [him]"; and
- If he tried to get out of the patrol car.

(*See* Bogen Decl. Exs. A-D.)

Mr. Gomez Dzul was interrogated for purposes of the Fifth Amendment.

### F. During the First Formal Interrogation, Mr. Gomez Dzul Did Not, and Could Not, Voluntarily and Intelligently Waive his *Miranda* Rights.

A person may waive their *Miranda* rights, "provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda,* 384 U.S. at 444. "[U]nless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Id.*; *see also*

*Withrow v. Williams*, 507 U.S. 680, 690 (1993) (*Miranda* requires the prosecution to "demonstrate the warnings and waiver as threshold matters").

The Supreme Court has explained that "[t]he inquiry" into the validity of the waiver "has two distinct dimensions." *Id.*

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine,* 475 U.S. 412 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

To find a *Miranda* waiver knowing and intelligent, the Court may consider several factors: (1) the defendant's mental capacity; (2) whether the defendant signed a written waiver; (3) whether the defendant was advised in his native tongue or had a translator; (4) whether the defendant appeared to understand his rights; (5) whether the defendant's rights were individually and repeatedly explained to him; and (6) whether the defendant had prior experience with the criminal justice system. *United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir. 2007) (citing *United States v. Garibay*, 143 F.3d 534, 537–39 (9th Cir. 1998)).

Here, Mr. Gomez Dzul gave no lawful *Miranda* waiver and his subsequent statements must be suppressed. At the beginning of his interrogation, the Border Agents, present without any neutral interpreter, read the *Miranda* warnings to Mr. Gomez Dzul quickly in Spanish. (Bogen Decl. Exs. B, C.). When they asked him if he

12

understood his rights, he initially said no. (*Id.*) Then, when they asked him if he wanted to give up his rights to speak to them, he expressed confusion. (*Id.*) Almost immediately after that, Border Agent Gonzalez aggressively asked, "do you want to talk to me right now or not?" and Mr. Gomez Dzul agreed, without understanding what protections he was giving up. (*Id.*)

      Looking to the Ninth Circuit factors outlined in *Crews*, 502 F.3d 1130, Mr. Gomez Dzul's mental capacity was likely limited at the time he agreed to speak with the Border Agents - he had been in custody for hours based on nothing and was exhausted and confused. He did not sign a written waiver of rights. He was not provided a neutral interpreter; to the contrary, the "interpreter" was an active member of the ongoing criminal investigation. He did not appear to understand his rights based on his answers and his facial expressions. The rights were not repeatedly explained to him, and he had limited prior interactions with law enforcement, almost ten years before this. (Bogen Decl. ¶ 2.) Weighing all of the *Crews* factors, it is obvious that his waiver was not voluntary, knowing, or intelligent.

      The Border Agent's question regarding waiver ("do you want to speak to me right now or not?") was deceptive and misleading. It provided no indication that Mr. Gomez Dzul knew that by speaking to them he was giving up any Fifth Amendment rights or the consequences of doing so. Border Agent Gonzalez also asked him this question after he had been in custody for hours, wrongfully detained, without the opportunity to speak to an attorney or anyone who was not law enforcement.  The "waiver" was coerced and was not the product of "free and deliberate choice." *Burbine,* 475 U.S. 412.

      Perhaps the most instructive point is Mr. Gomez Dzul's actions later in the day during the second interview, when he was Mirandized orally and in writing. (Bogen Decl. Ex. E.) He immediately invoked his right to counsel. (*Id.*) This is perhaps the best indication that the *Miranda* warnings during the first interrogation were insufficient,

13

and as a result he did not understand the rights he had or the rights he would be giving up by agreeing to speak to the Border Agents.

Based on his facial expressions, the speed of the questioning, the lack of a Spanish interpreter who was truly neutral, and the ambiguous phrasing asking him to give up his rights, it cannot be said that his waiver was voluntary, knowing, and intelligent. All post-arrest evidence, including statements made during his video-recorded interview, must be suppressed.

## IV. CONCLUSION

Mr. Gomez Dzul was profiled, harassed, chased, wrongfully arrested, and interrogated without validly waiving any rights against self-crimination or to counsel. The Border Agents in this case violated his Fourth and Fifth Amendment rights so severely that they taint all evidence collected after his initial arrest. The Court should grant his Motion and suppress all evidence collected after Mr. Gomez Dzul was placed in the Border Agents' vehicle.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 2, 2025        By  */s/ Hannah A. Bogen*
HANNAH A. BOGEN
JIMMY S. THREATT
Deputy Federal Public Defenders
Attorneys for RUSSELL GOMEZ DZUL