CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JAMES S. THREATT (Bar No. 325317)
(E-Mail: Jimmy_Threatt@fd.org)
HANNAH A. BOGEN (Bar No. 324294)
(E-Mail: Hannah_Bogen@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
RUSSELL GOMEZ DZUL

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RUSSELL GOMEZ DZUL, <br><br> Defendant, | Case No. 25-CR-00503-MAA <br><br> **DEFENDANT RUSSELL GOMEZ DZUL'S MOTION TO COMPEL PRODUCTION OF GRAND JURY TRANSCRIPTS; DECLARATION OF COUNSEL** <br><br> Hearing: November 5, 2025 at 10:00 a.m. |

Defendant Russell Gomez Dzul, through undersigned counsel, hereby files this motion to compel grand jury testimony transcript(s).

                                      Respectfully submitted,

                                      CUAUHTEMOC ORTEGA
                                      Federal Public Defender

DATED: October 2, 2025        By  */s/ James S. Threatt*
                                      JAMES S. THREATT
                                      HANNAH A. BOGEN
                                      Deputy Federal Public Defenders
                                      Attorneys for Russell Gomez Dzul

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND...................................................................................................2

III. ARGUMENT.......................................................................................................3

    A.    The grand jury transcripts include *Brady/Giglio evidence.* .........................4

    B.    There is little interest in protecting the secrecy of the grand jury proceedings..................................................................................................5

IV. CONCLUSION ...................................................................................................6

i

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Brady v. Maryland*,
   373 U.S. 83 (1963)..................................................................................1, 4, 6

*Chavis v. State of N.C.*,
   637 F.2d 213 (4th Cir. 1980) ...............................................................................4

*Douglas Oil Co. v. Petrol Stops Northwest*,
   441 U.S. 211 (1979)..............................................................................................4

*Gigilo v. United States*,
   405 U.S. 150 (1972)..................................................................................1, 4, 6

*U.S. Indus, Inc. v. U.S. Dist. Court for the Southern Dist. of Cal., Central Division*,
   345 F.2d 18 (9th Cir. 1965) ..................................................................................6

*United States v. Budziak*,
   697 F.3d 1105 (9th Cir 2012) ...............................................................................6

*United States v. Cadet*,
   727 F.2d 1453 (9th Cir. 1984) ........................................................................6, 7

*United States v. Campagnuolo*,
   592 F.2d 852 (5th Cir.1979) .................................................................................4

*United States v. Davenport*,
   753 F.2d 1460 (9th Cir. 1985) ..............................................................................5

*United States v. Elmore*,
   423 F.2d 775 (4th Cir. 1970) ................................................................................5

*United States v. Hernandez Gonzalez*,
   608 F.2d 1240 (9th Cir. 1979) ..............................................................................5

*United States v. Olano*,
   62 F.3d 1180 ........................................................................................................6

*United States v. Price*,
   566 F.3d 900 (9th Cir. 2009) ................................................................................7

## TABLE OF AUTHORITIES

Page(s)

*United States v. Sells Eng'g*,
   463 U.S. 418 (1983)..................................................................................................4

*United States v. Tarantino*,
   846 F.2d 1384 (D.C. Cir. 1988)..................................................................................5

*United States. v. Sudikoff*,
   36 F. Supp. 2d 1196 (C.D. Cal. 1999).........................................................................7

**Federal Rules & Statutes**

Fed. Rule Crim. of Proc. 6(e) ...............................................................................................4

# I. INTRODUCTION

Prior government counsel responsible for this matter indicated that the case would be presented to the grand jury on June 18, 2025. Mr. Gomez Dzul had been arrested on Monday, June 9 and ordered detained. This meant that Monday, June 23 was the final day for the government to obtain an indictment. As a practical matter, however, June 18 was the last day because the following day, Thursday, June 19 was a federal holiday and, due to the holiday, the grand jury also would not sit on Friday, June 20. (Declaration of James S. Threatt ("Threatt Decl.") ¶ 2.) The AUSA then handling the matter specifically told defense counsel that she would go to the grand jury on Wednesday, June 18 to obtain an indictment. (*Id.*) Towards the end of the day on June 18, instead of an indictment, defense counsel was informed that Mr. Gomez had been charged with a Class A misdemeanor by way of information. (*Id.* ¶ 3.)

The government has since declined to confirm that a presentation to the grand jury was made. (*Id.* ¶ 4.) According to press reports (and defense counsel's knowledge from other cases being handled by the Office of the Federal Public Defender), a number of presentations to the grand jury have resulted in grand jurors declining to indict the accused.[1] This is especially salient here because, as set out in Mr. Gomez Dzul's accompanying motion to suppress, he was essentially arrested for riding his bicycle as a Hispanic man.

Witness testimony before a grand jury, especially if said testimony contributed to the grand jury declining to return an indictment, is highly relevant to Mr. Gomez Dzul's defense under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). The defense respectfully asks the Court to order the government to produce any transcripts of grand jury proceedings in this matter.

---

[1] *See, e.g.*, "Top L.A. Federal Prosecutor Struggles to Secure Protestor Indictments," July 23, 2025, available at https://www.latimes.com/california/story/2025-07-23/protester-charges-essayli

1

## II. BACKGROUND

On June 7, 2025, Mr. Gomez Dzul was arrested while riding his bicycle when he was racially profiled and arrested by at least two U.S. Border Patrol Agents. He was initially charged on a felony complaint for assaulting a federal officer. (*See* Exhibit A, Criminal Complaint, 2:25-mj-3509-DUTY.)

According to the complaint, CBP officers O.I. and L.M. were "patrolling their assigned area in Los Angeles, California." (Ex. A ¶ 5.) "At approximately 12:55 p.m., Agents O.I. and L.M. were on foot in a parking lot attempting to pursue an unidentified individual suspected of criminal activity, when they observed a male subject, later identified as [Mr. Gomez Dzul], on a passing bicycle." (Ex. A ¶ 6.)

The complaint's affidavit was sworn by Special Agent Steve Yoon, who based his allegations on "publicly available video footage [from social media] and conversations with Agent O.I." (Ex. A ¶ 9.) "It appears that in attempting to exit the area, Agent L.M. opened the rear passenger door of the Border Patrol vehicle where [Mr. Gomez Dzul] was seated. The instant the door opened, [Mr. Gomez Dzul] pushed his weight against the door, moved his feet out of the vehicle, and attempted to get out of the vehicle. Agent O.I. physically blocked [Mr. Gomez Dzul's] exit and used his hands to restrain [Mr. Gomez Dzul] while still holding the pepper spray cannister in his left hand." (Ex. A ¶ 9.)

Agent Yoon continues: "While [Mr. Gomez Dzul] was physically trying to force his way out of the Border Patrol vehicle, Agent O.I. attempted to push [Mr. Gomez Dzul] back into the vehicle, while simultaneously facing the crowd and with his back turned to [Mr. Gomez Dzul]. According to Agent O.I., he felt a shove on his hip from [Mr. Gomez Dzul] from behind in [Mr. Gomez Dzul's] attempt to get out of the vehicle. Based on my review of video footage, [Mr. Gomez Dzul] then wrapped his legs around Agent O.I.'s body and pulled his foot on Agent O.I.'s groin while [Mr. Gomez Dzul] was still fighting to get out of the door." (Ex. A ¶ 10.)

1    "Within minutes, Agent L.M. went to the driver's side passenger door of the
2    Border Patrol vehicle and pulled [Mr. Gomez Dzul] back into the vehicle and away
3    from Agent O.I. Agents O.I. and L.M. subsequently secured [Mr. Gomez Dzul] in the
4    vehicle again, entered the vehicle, and drove to a Customs and Border Protection
5    ("CBP") location in El Segundo, California."  (Ex. A ¶ 11.)

6    Notably, the government has only produced a single eight-minute segment of
7    footage from any of the body cameras worn by any of the three officers.[2]  That video
8    footage only captures the initial arrest of Mr. Gomez Dzul and a few minutes of an un-
9    *Mirandized* interrogation in a CBP patrol car.  In other words, none of the subsequent
10   events, which includes the alleged assault, is captured in the body camera footage that
11   has been produced by the government.  The government has produced two video clips
12   that were uploaded to social media.  However, those clips are woefully incomplete and
13   lack important context, including the opening of the car door and, most critically, the
14   initiation of contact between Mr. Gomez Dzul and Agent O.I., which is apparently
15   when the alleged assault occurred.  In the Complaint, Agent Yoon also confirms that
16   much of the details he provides comes from speaking with the individual officers.

17   The bulk of these allegations, therefore, must depend on the oral statements of
18   individual officers.  This makes the transcripts of witness testimony before the grand
19   jury all the more critical, especially because no indictment was returned.  The Court
20   should order the government to either produce all transcripts of the grand jury
21   proceedings, or else confirm in writing and under penalty of perjury that no
22   presentation was ever made to the grand jury regarding this case.

### III. ARGUMENT

24   Disclosure of grand jury materials under Fed. Crim. Rule of Proc. 6(e) is
25   generally permitted upon a defendant's showing of a "particularized need."  *See*
26   *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 221–22 (1979); *United States*

---

[2] This entire body camera clip has been lodged with the Court in connection with Mr. Gomez-Dzul's motion to suppress evidence and statements. (Dkts. 42–43.)

*v. Sells Eng'g*, 463 U.S. 418, 442–443 (1983).  This showing of "particularized need" requires that the party requesting disclosure show that the material sought is necessary to "avoid possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Sells Eng'g*, 463 U.S. at 443.

**A.    The grand jury transcripts include *Brady/Giglio* evidence.**

The prosecutor in a criminal case must disclose evidence favorable to the accused.  The Supreme Court has stated that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  *Brady* also requires the disclosure of evidence impeaching the testimony of a government witness when the reliability of that witness may be determinative of a criminal defendant's guilt or innocence.  *Giglio v. United States*, 405 U.S. 150 (1972); *see also* Bagley, 473 U.S. 667 (1985).

The mandates of *Brady* and *Giglio* override the requirements of the Jencks Act. *See e.g., Chavis v. State of N.C.*, 637 F.2d 213, 223 (4th Cir. 1980) (*Brady* is broader than Jencks and may be violated when government fails to disclose material that otherwise is not discoverable under Jencks); *United States v. Campagnuolo*, 592 F.2d 852, 860 (5th Cir.1979) (stating without deciding that *Brady* would override Jencks Act when failure to order pretrial discovery would result in denial of defendant's due process rights); *United States v. Tarantino*, 846 F.2d 1384, 1414 n.11 (D.C. Cir. 1988) (government's *Brady* obligations are in no way lessened by the Jencks Act limitations).

The government must make a "reasonable effort" to aid the defense in obtaining favorable evidence and witnesses.  *United States v. Henao*, 652 F.2d 591, 592 (5th Cir. 1981); *United States v. Hernandez Gonzalez*, 608 F.2d 1240, 1246 (9th Cir. 1979). Furthermore, the government must disclose *Brady* material at a time that permits the defense to use these materials for trial preparation.  *See, e.g., United States v. Elmore*,

4

423 F.2d 775, 779 (4th Cir. 1970); *United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir. 1985).

Here, the fact that no indictment was obtained against Mr. Gomez Dzul despite the government's stated intention to obtain an indictment from a grand jury (Threatt Decl. ¶ 2.), raises a valid inference that any grand jury transcripts are unfavorable to the government and favorable to the defense. Moreover, they may impeach trial witnesses if trial witness testimony differs in any respect from the testimony provided to the grand jury.

**B.   There is little interest in protecting the secrecy of the grand jury proceedings.**

There is little interest in secrecy at this point in the proceedings. Ordinarily, courts weigh the need for disclosure against the traditional policies underlying grand jury secrecy:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to ensure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment of their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at [t]he trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation

*See U.S. Indus, Inc. v. U.S. Dist. Court for the Southern Dist. of Cal., Central Division*, 345 F.2d 18, 21 (9th Cir. 1965).

None of those considerations apply here. Mr. Gomez Dzul has already been charged; there is no further grand jury deliberation to be had. There is no threat of witness intimidation, particularly since the witnesses are law enforcement, not lay

persons. Indeed, once a grand jury's investigation has terminated, most of the reasons for grand jury secrecy are no longer applicable and the others are less than compelling.

## IV. CONCLUSION

For these reasons, Mr. Gomez Dzul requests the Court compel the government to produce any grand jury testimony transcript(s) to the defense.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 2, 2025        By  */s/ James S. Threatt*
                              JAMES S. THREATT
                              HANNAH A. BOGEN
                              Deputy Federal Public Defenders
                              Attorneys for Russell Gomez Dzul

**DECLARATION OF JAMES S. THREATT**

I, James S. Threatt, declare:

1. I am an attorney with the Office of the Federal Public Defender for the Central District of California. I am licensed to practice law in the State of California and I am admitted to practice in this Court. I am appointed to represent Russell Gomez Dzul in this matter.

2. The initial Assistant United States Attorney who handled this matter indicated that the government would go to the grand jury to obtain an indictment on June 18, 2025. The reason for going to the grand jury before the two week deadline to return an indictment against Mr. Gomez-Dzul was that the grand jury would not convene on either June 19 or June 20 because June 19 was a federal holiday.

3. In the afternoon of June 18, 2025, I received a phone call from that Assistant United States Attorney indicating that Mr. Gomez-Dzul had been charged by information with a Class A Misdemeanor instead of with a felony assault charge by indictment.

4. The government has declined to confirm whether or not a presentation to the grand jury was made.

5. Attached as Exhibit A is a true and correct copy of the Complaint in this matter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 2, 2025, at Los Angeles, California.

*/s/ James S. Threatt.*
James S. Threatt

1

# EXHIBIT A

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America<br><br>v.<br><br>Russell Gomez Dzul,<br><br>Defendant | Case No. |

FILED
CLERK, U.S. DISTRICT COURT

June 8, 2025

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CLD___ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of June 7, 2025 in the county of Los Angeles in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 111(a)(1) | Assaulting, Resisting, or Impeding Officers |

This criminal complaint is based on these facts:

   *Please see attached affidavit.*

   ☒ Continued on the attached sheet.

/s/ Steve Yoon
Complainant's signature

Steve Yoon, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: June 8, 2025 at 4:04 p.m.

*Judge's signature*

City and state: Los Angeles, California

Hon. Jacqueline Chooljian, U.S. Magistrate Judge
*Printed name and title*

AUSA: Thi Hoang Ho (x0596)

EXHIBIT A - Page 1 of 7

**AFFIDAVIT**

I, Steve Yoon, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Russell GOMEZ DZUL ("GOMEZ") for a violation of 18 U.S.C. § 111(a)(1): assaulting, resisting, or impeding certain officers or employees.

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; video footage, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. BACKGROUND OF AFFIANT

3. I am a Special Agent ("SA") with Homeland Security Investigations ("HSI"), Department of Homeland Security, and have been so employed since December 2022. Prior to my appointment with HSI, I was a SA for Diplomatic Security Service ("DSS"), U.S. Department of State, for three years, a Counterintelligence SA for Department of Defense for two years, and a U.S. Army active-duty Soldier, for four years. My relevant training includes the Criminal Investigator Training Program,

ii

HSI Special Agent Training course, DSS Basic Special Agent Course, DoD Counterintelligence Agent Course, and U.S. Army Interrogator training. My duty as a HSI SA is to investigate various crimes of federal law. I am currently assigned to the HSI Los Angeles International Airport Group and have training and experience investigating assaults on federal officers. As part of my law enforcement training and experience, I have participated in the execution of search/arrest warrants and participated in the seizure of evidence.

### III. STATEMENT OF PROBABLE CAUSE

4. Based on my review of law enforcement reports, videos of the incident, and conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A. GOMEZ Assaulted an Agent in the Process of Attempting to Flee From Arrest**

5. On June 7, 2025, U.S. Border Patrol ("Border Patrol") Agents O.I. and L.M. were patrolling their assigned area in Los Angeles, California. Agents O.I. and L.M. were in uniforms that displayed their Border Patrol and police badges on their vests.

6. At approximately 12:55 p.m., Agents O.I. and L.M. were on foot in a parking lot attempting to pursue an unidentified individual suspected of criminal activity, when they observed a male subject, later identified as GOMEZ, on a passing bicycle. According to Agent O.I., GOMEZ appeared startled and nervous when he saw the agents, and GOMEZ abruptly changed course, moving away from the agents at accelerating speeds. Based on

GOMEZ's reaction and movements, Agent O.I. perceived GOMEZ to be attempting to evade the agents, and suspected GOMEZ of being in the U.S. illegally.

7.  Agent L.M. ordered GOMEZ to stop. GOMEZ did not comply, abandoned his bicycle, and fled on foot. Body-worn camera ("BWC") footage shows that Agents O.I. and L.M. pursued GOMEZ for several blocks and that GOMEZ attempted to conceal himself behind a parked vehicle. Agent L.M. ordered GOMEZ to surrender, but GOMEZ did not comply. When officers approached GOMEZ and attempted to arrest him, GOMEZ physically resisted arrest by forcefully pulling his arms away from the agents' grips. Agents O.I. and L.M. successfully placed GOMEZ into handcuffs, arrested him, and secured him into a marked Border Patrol vehicle in the rear passenger seat.

8.  Agents O.I. and L.M. remained on foot outside the Border Patrol vehicle when a group of protesters, comprised of approximately 5 to 15 people, confronted the agents and told them to "get the fuck out of here." Agents O.I. and L.M. ordered the crowd back and away from them, but the crowd did not comply. Based on my review of publicly available video footage of the incident, protesters were filming on their cell phones, yelling obscenities at the agents, and throwing items at the agents, including rocks. Agents O.I. and L.M. unholstered their oleoresin capsicum spray (commonly referred to as "pepper spray") but did not discharge the spray on the crowd. Specifically, Agent O.I. had his pepper spray cannister in his left hand.

9. Based on my review of publicly available video footage and conversations with Agent O.I., it appears that in attempting to exit the area, Agent L.M. opened the rear passenger door of the Border Patrol vehicle where GOMEZ was seated. The instant the door opened, GOMEZ pushed his weight against the door, moved his feet out of the vehicle, and attempted to get out of the vehicle. Agent O.I. physically blocked GOMEZ's exit and used his hands to restrain GOMEZ while still holding the pepper spray cannister in his left hand.

10. While GOMEZ was physically trying to force his way out of the Border Patrol vehicle, Agent O.I. attempted to push GOMEZ back into the vehicle, while simultaneously facing the crowd and with his back turned to GOMEZ. According to Agent O.I., he felt a shove on his hip from GOMEZ from behind in GOMEZ's attempt to get out of the vehicle. Based on my review of video footage, GOMEZ then wrapped his legs around Agent O.I.'s body and pulled his foot on Agent O.I.'s groin while GOMEZ was still fighting to get out of the door.[1]

11. Within minutes, Agent L.M. went to the driver's side passenger door of the Border Patrol vehicle and pulled GOMEZ back into the vehicle and away from Agent O.I.. Agents O.I. and

---

[1] During the struggle to prevent GOMEZ from fleeing, Agent O.I. tried to use both hands to restrain GOMEZ, while still holding his pepper spray in his left hand. Agents later discovered that during this physical struggle, there was an accidental discharge of a small drop of pepper spray on GOMEZ's right cheek as well as Agent O.I.'s left hand. Agents did not observe any physical symptoms or irritation on GOMEZ as a result of the accidental discharge. Later, at approximately at 6:30 p.m., when HSI agents attempted to interview GOMEZ, I asked him if he needed any medical attention, had any medical issues, or required any medicine.  GOMEZ declined all the foregoing.

L.M. subsequently secured GOMEZ in the vehicle again, entered the vehicle, and drove to a Customs and Border Protection ("CBP") location in El Segundo, California.

    **B.**    **GOMEZ's Statements**

12. On the same day, June 7, 2025, at approximately 3:12 p.m., while in CBP custody, Border Patrol Agent S.G. conducted an interview of GOMEZ in the Spanish Language. Agent S.G. provided GOMEZ his <u>Miranda</u> rights in the Spanish Language.

13. Based on my conversations with Agent S.G., GOMEZ acknowledged he understood his rights and agreed to speak with Agent S.G.. During the interview, GOMEZ claimed he ran away from Agents O.I. and L.M. on instinct when he saw the "cop car." GOMEZ admitted that he trying to get out of the Border Patrol vehicle but that he could not because an agent was blocking the doorway. GOMEZ did not indicate whether he struck the agent or had any physical contact with the agent.

//
//
//
//
//
//

## IV. CONCLUSION

14. For all of the reasons described above, there is probable cause to believe that Russell GOMEZ DZUL has committed a violation of 18 U.S.C. § 111(a)(1).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this __8th__ day of June
2025 at 4:04 p.m.

_____
THE HONORABLE JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE