CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JAMES S. THREATT (Bar No. 325317)
(E-Mail: jimmy_threatt@fd.org)
HANNAH A. BOGEN (Bar No. 324294)
(E-Mail: Hannah_Bogen@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
RUSSELL GOMEZ DZUL

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUSSELL GOMEZ DZUL,<br><br>Defendant. | Case No. 2:25-CR-00503-BFM<br><br>**RUSSELL GOMEZ DZUL'S OMNIBUS OPPOSITION TO THE GOVERNMENTS MOTIONS *IN LIMINE* TO EXCLUDE EVIDENCE OF HIS ARREST AND IMMIGRATION POLICY, ECF NOS. 68, 72.**<br><br>**Hearing Date:** January 6, 2026<br>**Hearing Time:** 1:00 PM |

Russell Gomez Dzul ("Mr. Gomez Dzul") respectfully submits his Opposition to the Government's Motion *In Limine* to Exclude Evidence Challenging the Legality of Mr. Gomez Dzul's Detention and its Motion *In Limine* to Exclude Improper Evidence Regarding Immigration Policy or the Reasons for Mr. Gomez Dzul's Detention ("Motions"), ECF Nos. 68, 72. Both Motions seek similar and overlapping relief and raise many of the same evidentiary arguments. Accordingly, for ease of review, Mr. Gomez Dzul responds to them together.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

1
2  DATED: December 29, 2025        By  */s/ Hannah A. Bogen*
3                                     HANNAH A. BOGEN
                                      JAMES S. THREATT
4                                     Deputy Federal Public Defenders
                                      Attorneys for RUSSELL GOMEZ DZUL
5

2

# I. INTRODUCTION

In its Motions, the government seeks to blindfold the jury and bar them from knowing half of the story in this case. Of course it does - because the half of the story the government wants to exclude shows that the government cannot prove Mr. Gomez Dzul's guilt beyond a reasonable doubt. If the Court grants the government's Motions, the jury will reach a verdict that is based on inaccurate and incomplete information, in violation of Mr. Gomez Dzul's Sixth Amendment rights.

The contested evidence includes footage of Mr. Gomez Dzul's initial arrest (the "Arrest Evidence"), which the Court found to be unlawful. (ECF 65 at 5-6.) Aside from violating Mr. Gomez Dzul's rights, the Arrest Evidence provides important context for what happened in this case. Indeed, this is the relatively unusual case where a crime is alleged to have occurred while someone was already in custody. The Arrest Evidence includes video footage of the border agents chasing someone else, losing him, then profiling and turning to Mr. Gomez Dzul as a target for no reason. It shows them aggressively arresting him and driving to a new location without telling him why or where they were going. It highlights how confusing and terrifying it was for Mr. Gomez Dzul when, immediately after that, the vehicle abruptly stopped, doors flew open, and all he heard and saw was chaos around him, leading to the alleged assault.

The government cannot shield the jury from half of the story. Without the Arrest Evidence, the jury will quite naturally assume that Mr. Gomez Dzul did something criminal to end up being arrested. That unfounded assumption would irreparably prejudice the defense. Moreover, the Arrest Evidence supports the most important facts in the case - that Mr. Gomez Dzul did not intentionally assault anyone, that O.I. was not acting within his official duties, and that Mr. Gomez Dzul acted in reasonable self-defense.

In addition to seeking to exclude the Arrest Evidence, the government moves to exclude "evidence, argument, or questioning concerning immigration policy, immigration enforcement, enforcement practices…[and] any video or evidence

1

predating Defendant's detention absent a showing, outside the presence of the jury, that such evidence is narrowly necessary to explain [Mr. Gomez Dzul's] use of force against the federal officer." (the "Immigration Evidence") (ECF 72.)  For many of the same reasons the Arrest Evidence is admissible, the Immigration Evidence is, too.

The government assumes that Mr. Gomez Dzul's defense will be an attack on immigration enforcement and immigration policy generally. (*See* Motions.) Not so. He will use the Arrest and Immigration Evidence to cross examine the witnesses against him, as permitted by the Sixth Amendment.

Mr. Gomez Dzul is entitled to present a complete defense. Cutting out half of his arrest would confuse the jury and severely prejudice Mr. Gomez Dzul. The Arrest and Immigration Evidence is relevant, admissible, much more probative than prejudicial, and essential to Mr. Gomez Dzul's defense. The Court should deny the government's Motions.

## II. MEMORANDUM OF POINTS AND AUTHORITIES

### A. The Defense Will Not Make Policy Arguments About Immigration Enforcement.

Contrary to the government's arguments, Mr. Gomez Dzul will not make arguments about immigration policy. (*See* Motions.) This case is not about whether or not immigration enforcement generally, is constitutional. It is about whether or not the border agents in *this case* are telling the truth, and whether or not the government can prove beyond a reasonable doubt that Mr. Gomez Dzul committed a crime. To the extent the government is concerned about the jurors' opinions on immigration policy, it should address that in its proposed voir dire.[1]

---

[1] It is unclear from the government's Motions, but Mr. Gomez Dzul defines the Immigration Evidence to include the border agents' *own* governing policies and procedures at the time of the alleged offense. He maintains his right to ask them about those policies and procedures at trial.

2

**B.     The Arrest and Immigration Evidence is Relevant Because it Demonstrates that the Border Agents Acted Outside of Their Official Duties When They Arrested Him.**

To find Mr. Gomez Dzul guilty at trial, the jury must decide that he assaulted a federal officer while the officer was "engaged in [his] official duties." *United States v. Ornelas*, 906 F.3d 1138, 1149 (9th Cir. 2018) ("the test" for determining whether officer is "[e]ngaged in the performance of official duties" is "whether the officer is acting within the scope of his employment, that is, whether the officer's actions fall within his agency's overall mission, in contrast to engaging in a personal frolic of his own"); *See Ninth Circuit Model Criminal Jury Instructions*, No. 8.1 (2022 ed.). There is no bright-line test to define "performance of official duties." *United States v. Clemons,* 32 F.3d 1504, 1507 (11th Cir. 1994). It is a fact-specific inquiry. *Id.*

Here, the Arrest and Immigration Evidence is highly relevant to whether O.I. acted within the scope of his official duties. Mr. Gomez Dzul has a Sixth Amendment right to cross examine the government's witnesses in this case about the unlawful arrest, as it cuts against the government's argument that O.I. acted within the scope of his official duties at the time of the alleged offense. This line of questioning is also probative of the border agents' bias and lack of credibility, which is always important for the jury to hear but especially as to a law enforcement officer who is alleged to have been assaulted.  *See United States v. Severeid*, 609 F. App'x 931, 933 (9th Cir. 2015) (on appeal for conviction for assaulting a federal official, noting that prosecutor's vouching for alleged victim was particularly damaging because the "jury was tasked with a close credibility contest" between the federal officer and the accused defendant). Failure to permit this line of questioning or introduction of the Arrest and Immigration Evidence would place this trial in a vacuum, present only the government's side of the story, and prevent Mr. Gomez Dzul from asserting a complete defense, in violation of his Sixth Amendment rights.

At its core, the government seems to be asking the Court to remove an important factual question from the province of the jury by holding, in effect, that the facts surrounding an unlawful arrest can never, as a matter of law, make an officer's actions fall outside the scope of his official duties. While an unlawful arrest might not guarantee that an officer has stepped outside his official duties, neither can the government credibly contend that the arrest has no bearing on that question. The Arrest and Immigration Evidence should be admitted.

**C.     The Arrest and Immigration Evidence Demonstrates That Mr. Gomez Dzul Acted in Self-Defense.**

Mr. Gomez Dzul "acted in reasonable self-defense if he reasonably believed that the force was necessary for the defense of himself against the immediate use of excessive force…[and did not use] more force than appeared reasonably necessary under the circumstances…[t]he government must prove beyond a reasonable doubt…that Mr. Gomez Dzul did not act in reasonable self-defense." *Ninth Circuit Model Criminal Jury Instructions*, No. 5.10 [Self-Defense] (2022 ed.) [if applicable]; *United States v. Span*, 75 F.3d 1383, 1389 (9th Cir. 1996); *United States v. Mirabal*, Case No. 18- CR-00335-MWF-2, Final Jury Instructions at 17, Dkt. No. 173 (June 17, 2022); *United States v. Lottie*, Case No. 20-CR-00115-MWF, Final Jury Instructions at 13, Dkt. No. 127 (July 15, 2021).

Here, although alleged to be continuous, the government now appears to argue that there were two separate instances of assault, as follows: "…Defendant attempted to escape from the vehicle by shifting his body out of the open door while yelling for the crowd's help. Agent O.I. then placed his body in the threshold of the open door to prevent Defendant from escaping—all while facing outward to ensure the crowd did not interfere with his duties or endanger him or his fellow agents. Defendant **continued** to push and kick O.I., at one point, placing his leg between O.I.'s legs and forcibly kicking O.I. in the groin area. This caused O.I. to visibly react in pain." (ECF 72 at 2.)

The Arrest and Immigration Evidence is highly relevant to Mr. Gomez Dzul's self-defense argument based on the circumstances of his initial arrest, continuing through the time of the alleged "continued" pushing and kicking. The government notes that self-defense in this context is typically limited to claims of excessive force. But it was the initial arrest that was the first instance of a pattern of excessive force, commencing with the handcuffing of Mr. Gomez Dzul and placing him, restrained, in the back of a CBP vehicle. As pictured in the relevant footage, O.I. placed his legs in between Mr. Gomez Dzul's legs, pushed him backwards, and choked him, shoving his elbow into the front of his neck. (Declaration of Hannah A. Bogen ("Bogen Decl.") Ex. A.) Then, L.M. dragged him from behind as he turned bright red, screaming in pain. (*Id.*) The Arrest and Immigration Evidence provides important context and circumstantial evidence of Mr. Gomez Dzul's state of mind at the time he acted in self-defense. This will help the jury in deciding if his self-defense was reasonable.

**D.   Evidence of Mr. Gomez Dzul's Unlawful Arrest is Relevant and Permitted by Several Federal Rules of Evidence.**

Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401.

To prove the elements of the offense, the government must prove that the border agents: 1) were federal officers engaged in official duties, and 2) that Mr. Gomez Dzul assaulted them during those duties. *See* Ninth Circuit Model Criminal Jury Instructions, No. 8.1 (2022 ed.) (Assault on a Federal Officer or Employee, 18 U.S.C. § 111(a)). "There is a forcible assault when one person intentionally strikes another, or willfully attempts to inflict injury on another, or intentionally threatens another coupled with an apparent ability to inflict injury on another which causes a reasonable apprehension of immediate bodily harm." *Id.*

Here, the Arrest and Immigration Evidence is highly relevant because it touches on three facts of consequence - whether Mr. Gomez Dzul intentionally assaulted anyone, whether O.I. was engaged in official duties, and whether Mr. Gomez Dzul

5

acted in reasonable self-defense. It demonstrates that Mr. Gomez Dzul did not intentionally strike anyone, that the border agents acted outside of their official duties, and that Mr. Gomez Dzul acted in reasonable self-defense. It provides necessary context for what would otherwise be dropping Mr. Gomez Dzul into a random moment in time that would undoubtedly confuse the jury and prejudice Mr. Gomez Dzul's case.

The Arrest and Immigration Evidence is also relevant to credibility. The fact that the border agents arrested Mr. Gomez Dzul for no reason gives them incentive to lie, including regarding whether Mr. Gomez Dzul assaulted a border agent, as they falsely claim. The border agents have an interest in framing Mr. Gomez Dzul as the aggressor because a finding unlawful conduct can subject them to workplace discipline, social opprobrium, and liability. Because the border agents' words will form the basis of the government's case, Mr. Gomez Dzul must be allowed to undermine their credibility, including with evidence that they have a motive to lie to justify their unlawful actions. *See* Fed. R. Evid. 608(b).

The core principle that a party may not mislead the jury at trial by providing incomplete information about a potentially prejudicial topic—as the government seeks to do here—is found throughout federal evidentiary rules and doctrines. For example, under Federal Rule of Evidence 106, "[i]f a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part – or any other statement – that in fairness ought to be considered at the same time." Under this Rule, where one party misleads the jury by only telling part of the story, "the material required for completeness is *ipso facto* relevant and therefore admissible under Rules 401 and 402." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988). Similarly, under the doctrine of curative admissibility, "the introduction of inadmissible evidence by one party allows an opponent, in the court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission." *Untied States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir. 1988). These rules and doctrines underscore a simple yet fundamental truth: allowing a party to

1  introduce evidence without the context necessary to understand it is unfair and
2  improper. When that happens, evidence necessary to provide clarity is "relevant and
3  therefore admissible under Rules 401 and 402." *See Rainey*, 488 U.S. at 172. Here, the
4  government's introduction of a snapshot of Mr. Gomez Dzul's unlawful arrest, cut off
5  in a way that exclusively benefits their case but severely prejudices his, necessarily
6  makes the Arrest and Immigration Evidence relevant, and the defense must be able to
7  provide the jury such context.

8  **E.  The Arrest and Immigration Evidence is Not Character Evidence.**

9  Contrary to the government's argument, Mr. Gomez Dzul will not use the Arrest
10 and Immigration Evidence to show that on the date of the offense, the border agents
11 acted in accordance with a character trait. (ECF 68 at 9.)  Mr. Gomez Dzul intends to
12 use the Arrest and Immigration Evidence to paint a complete picture of what happened
13 that day and provide circumstantial evidence of his state of mind at the time of the
14 alleged incident. This is not character evidence and is admissible at trial.

15 The Arrest and Immigration Evidence will also be used to argue that the border
16 agents lack credibility, as explained above.

17 **F.  The Arrest and Immigration Evidence Has Probative Value That**
18 **Outweighs Any Prejudicial Effect.**

19 The Court may exclude relevant evidence if its probative value is substantially
20 outweighed by a danger of one or more of the following: unfair prejudice, confusing
21 the issues, misleading the jury, undue delay, wasting time, or needlessly presenting
22 cumulative evidence.  Fed. R. Evid. 403. Rule 403 has long been "characterized . . . as
23 an extraordinary remedy to be used sparingly because it permits the trial court to
24 exclude otherwise relevant evidence." *United States v. Patterson*, 819 F.2d 1495, 1505
25 (9th Cir. 1987) (internal quotation marks omitted). The Rule "does not permit the court
26 to exclude [a party]'s evidence simply because it may hurt the [other]." *Old Chief v.*
27 *United States*, 519 U.S. 172, 193 (1997) (O'Connor, J., dissenting).
28

7

The Arrest and Immigration Evidence is not just probative, it is critical to Mr. Gomez Dzul's defense in this case because it speaks to both elements of the offense as well as his affirmative defense. The Court will instruct the jury on what is and is not evidence, and that it should apply the facts of the case to the law - not that it should opine on immigration policy generally. Voir dire will also ensure that Mr. Gomez Dzul is tried in front of a jury that is able to do that. To the extent that the government is concerned about any prejudice resulting from a jury seeing footage of Mr. Gomez Dzul's arrest, it should propose voir dire questions to address that issue.

The standard for exclusion under Rule 403 is that the risk of unfair prejudice *substantially* outweighs any probative value. Fed. R. Evid. 403. Here, the opposite is true. The prejudicial effect, if any, is minimal. The probative value of the Arrest and Immigration Evidence is exceedingly high given its bearing on both elements. Contrary to the government's argument, it is *exclusion* of Mr. Gomez Dzul's arrest that would be unfairly prejudicial. Given that this is a criminal offense that is alleged to have occurred while Mr. Gomez Dzul was already in custody, the jury will naturally assume that he had been arrested because he did something unlawful or criminal, when quite the opposite is true.

**G.    The Government's Requested Relief Should Be Denied.**

The government outlines its requested relief in its Motions. (ECF 68 at 11-12; ECF 72 at 6.) For ease of review, Mr. Gomez Dzul responds to each ask and states why the Court should deny it.

"The defense shall not:

- Argue, suggest, or imply that Defendant's detention or arrest was unlawful, unconstitutional, or lacked legal authority;"

    o  Response: The Court ruled that Mr. Gomez Dzul's arrest was unlawful. (ECF 65 at 5-6.) The jury is allowed to know about how he ended up in a car with a group of border agents before the alleged offense occurred. This evidence is relevant and admissible, and its exclusion would deprive

8

    the jury of important context and violate Mr. Gomez Dzul's rights under the Sixth Amendment.

- "Argue or suggest that alleged illegality of the detention removed the officers from the performance of official duties within the meaning of 18 U.S.C. § 111;"
  - Response: Mr. Gomez Dzul is entitled to a defense. The jury is who gets to decide if O.I. acted outside of his official duties.
- "Invite the jury to reconsider or pass judgment on the legality of the detention, arrest, immigration enforcement authority, or constitutional compliance already resolved by the Court;"
  - Response: Mr. Gomez Dzul does not seek to ask the jury to decide, a second time, if his initial arrest was lawful. It is their right, however, to assess credibility of the border agents accusing Mr. Gomez Dzul of committing a crime, in part based on their actions leading up to the alleged offense.
- "Introduce evidence or argument concerning immigration enforcement policy, Border Patrol practices, or alleged institutional misconduct unrelated to Defendant's charged conduct;"
  - Response: It is unclear what exactly the government seeks to exclude here, but Mr. Gomez Dzul agrees that his trial is about a federal assault charge, not immigration policy. That being said, his initial immigration-focused arrest is relevant and admissible.
- "Present stop-legality or constitutional arguments under the guise of 'context,' 'background,' or 'official duties.'"
  - Response: For the reasons already stated, the Arrest and Immigration Evidence is a necessary portion of the story of this case that the jury should know about.
- The Court should preclude the defense from introducing evidence, argument, or questioning concerning immigration policy, immigration enforcement, enforcement

9

practices, or the reason for Defendant's detention. The Court should further exclude any video or evidence predating Defendant's detention absent a showing, outside the presence of the jury, that such evidence is narrowly necessary to explain Defendant's use of force against the federal officer.

- Response: The defense does not seek to introduce evidence of immigration policy generally. It does, however, seek to acknowledge how Mr. Gomez Dzul ended up in the back of a border patrol vehicle with the border agents in this case. Failure to include this necessary context would unnecessarily confuse the jury, severely prejudice Mr. Gomez Dzul, and prevent him from presenting a complete defense, in violation of his Sixth Amendment rights.

The government's proposed requests for relief are overbroad, unnecessary, and without basis in the law. The Court should deny the government's Motions.

**H.    If the Court Grants the Government's Motions, it Should Provide a Curative Instruction to the Jury Confirming That Mr. Gomez Dzul's Arrest Was Unlawful.**

If the Court excludes the Arrest and Immigration Evidence, it should instruct the jury confirming that the initial arrest was unlawful. Failure to acknowledge the initial arrest in any way will prevent Mr. Gomez Dzul from presenting a complete defense in violation of his Sixth Amendment rights. Even with an instruction, he maintains his request to cross examine the government's witnesses about the arrest and present the Arrest and Immigration Evidence for purposes of impeachment.

### III. CONCLUSION

Mr. Gomez Dzul has a Sixth Amendment right to present a complete defense, and his use of the Arrest and Immigration Evidence is well-supported by the Federal Rules of Evidence. The Court should deny the government's Motions.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: December 29, 2025      By  /s/ *Hannah A. Bogen*
　　　　　　　　　　　　　　　　　HANNAH A. BOGEN
　　　　　　　　　　　　　　　　　JIMMY S. THREATT
　　　　　　　　　　　　　　　　　Deputy Federal Public Defenders
　　　　　　　　　　　　　　　　　Attorneys for RUSSELL GOMEZ DZUL

11